CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Chris Carson, Esq., SBN 280048
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mary Melton, Esq., SBN 164407
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **T.T. Group, Inc.,** a California Corporation; **Jennifer Chen; Michael T. Cobler**; and Does 1-10, <br><br> Defendants. | Case No. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Johnson complains of Defendants T.T. Group, Inc., a California Corporation; Jennifer Chen; Michael T. Cobler; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

1

Complaint

2.   Defendants T.T. Group, Inc. and Jennifer Chen owned the real property located at or about 900 N. 1st Street, San Jose, California, in May 2017.

3.   Defendants T.T. Group, Inc. and Jennifer Chen owned the real property located at or about 900 N. 1st Street, San Jose, California, in August 2017.

4.   Defendants T.T. Group, Inc. and Jennifer Chen owned the real property located at or about 900 N. 1st Street, San Jose, California, in October 2017.

5.   Defendants T.T. Group, Inc. and Jennifer Chen owned the real property located at or about 900 N. 1st Street, San Jose, California, in November 2017.

6.   Defendants T.T. Group, Inc. and Jennifer Chen own the real property located at or about 900 N. 1st Street, San Jose, California, currently.

7.   Defendant Michael T. Cobler owned the TOGO's restaurant located at or about 900 N. 1st Street, San Jose, California, in May 2017.

8.   Defendant Michael T. Cobler owned the TOGO's restaurant located at or about 900 N. 1st Street, San Jose, California, in August 2017.

9.   Defendant Michael T. Cobler owned the TOGO's restaurant located at or about 900 N. 1st Street, San Jose, California, in October 2017.

10. Defendant Michael T. Cobler owned the TOGO's restaurant located at or about 900 N. 1st Street, San Jose, California, in November 2017.

11. Defendant Michael T. Cobler owns the TOGO's restaurant ("Restaurant") located at or about 900 N. 1st Street, San Jose, California, currently.

12. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief.

Complaint

Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

13. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

14. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

15. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

16. Plaintiff went to the Restaurant on a number of occasions during the relevant statutory period, including May 2017 (once), August 2017 (once), October 2017 (once), and November 2017 (four times).

17. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

18. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

19. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant, accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines (ADAAG) during

Complaint

plaintiff's visits.

20. Instead, there was just a single parking space ostensibly available for persons with disabilities that did not have an access aisle that accompanied it.

21. On information and belief, the plaintiff alleges that there used to be accessible parking in the lot serving the business but the parking spaces have been allowed to fade or get paved over.

22. Currently, there are no compliant, accessible parking space designed and reserved for persons with disabilities in the parking lot serving the Restaurant.

23. The Defendants had no policy or plan in place to make sure that the parking space reserved for persons with disabilities remained useable prior to plaintiff's visits.

24. The Defendants have no policy or plan in place to make sure that the parking space reserved for persons with disabilities remain useable currently.

25. In fact, because there are about 59 parking spaces in the parking lot, there should be three parking spaces marked and reserved for persons with disabilities. There was just one parking space in the parking lot potentially for use by persons with disabilities but that parking space was not compliant with the law.

26. Transaction counters are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

27. Unfortunately, the transaction counters inside the Restaurant are not accessible. The main counter is 58 inches in height. The second counter, which is lower, is 42 inches in height. Under the lowered counter, there is a broken folding table that is 35 inches in height.

28. As such, there were no compliant transaction counters during plaintiff's visits.

29. Outdoor tables are one of the facilities, privileges, and advantages

Complaint

offered by Defendants to patrons of the Restaurant.

30. There are tables provided for dining outside but not one is accessible to wheelchair users because: (1) there is no knee clearance measuring at least 27 inches high, 30 inches wide and 19 inches deep.

31. Restrooms are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

32. Unfortunately, the restroom door hardware requires tight grasping and twisting of the wrist to operate.

33. Finally, the flush control for the accessible toilet is not mounted on the wide or open side of the toilet.

34. Plaintiff personally encountered these barriers.

35. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty and frustration.

36. The barriers existed during each of Plaintiff's visits in 2017.

37. The plaintiff frequents the San Jose area and visited there on many occasions during the statutory period. He ate the Restaurant twice in November 2017. He encountered the barriers. On five other occasions plaintiff was deterred from going inside because of the lack of accessible facilities.

38. Plaintiff would like to return and patronize the Restaurant but will be deterred from visiting until the defendants cure the violations.

39. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

40. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous

Complaint

alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

41. For example, there are numerous paint/stripe companies that will come and stripe parking stalls and access aisles and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

42. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

43. Plaintiff is and has been deterred from returning and patronizing the Restaurant because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

44. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

45. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of

6

Complaint

accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

46. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

47. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities,

Complaint

including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

48. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

49. Here, the lack of an accessible parking space is a violation of the law.

50. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

51. Here, no such accessible transaction counter has been provided in violation of the ADA.

52. Where fixed tables are provided, at least 5 percent, but not less than one, of the fixed tables shall be accessible. 1991 Standards § 5.1; 2010 Standards § 226.1. To be accessible, the table surface cannot be higher than 34 inches above the floor. 1991 Standards § 4.32.4; 2010 Standards § 902.3. Moreover, there must be knee clearance for wheelchair users measuring at least 27 inches

high, 30 inches wide, and 19 inches deep. 1991 Standards § 4.32.3; 2010 Standards § 306.3 (the 2010 Standards actually require a different depth).

53. Here the failure to provide outdoor accessible tables is a violation of the law.

54. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

55. Here, the failure to provide accessible restroom door hardware is a violation of the law.

56. Flush controls for accessible toilets must be mounted on the open or wide side of the toilet, i.e., not the side nearest the adjacent side wall. 1991 Standards § 4.16.5; 2010 Standards § 604.6.

57. Here, the failure to properly locate the flush control is a violation of the ADA.

58. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

59. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

60. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

Complaint

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

61. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

62. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

63. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

64. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

Complaint

1    3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant

2    to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

3

4    Dated: February 13, 2018          CENTER FOR DISABILITY ACCESS

5

6                                By:  *Isabel P. M*

7                                _____

8                                      Isabel Masanque, Esq.
                                      Attorney for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint